**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DOUGLAS LINDSAY, SR., et al.,** | ) | **Case No. 1:05CV1625** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE ANN ALDRICH** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BRENT YATES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | <u>**MEMORANDUM AND ORDER**</u> |
| | ) | |

Plaintiffs Douglas and Tina Lindsay filed this action alleging violations of federal and state housing-discrimination laws as well as common law breach of contract claims.  (Doc. No. 1.)

Before the court are three motions for summary judgment brought by the various defendants: Brent Yates and JoAnn Yates' motion for summary judgment on the federal housing-discrimination claims (Doc. No. 141); the Estate of Gene Yates' motion for summary judgment on all claims (Doc. No. 142); and Carol Eicher and Sluss Realty Company's motion for summary judgment on all claims (Doc. No. 145).  For the reasons set forth below, the court grants Brent Yates and JoAnn Yates' motion and dismisses the Lindsays' federal claims with prejudice.  Further, the court declines to exercise supplemental jurisdiction over the state claims.  Accordingly, the remaining two motions for summary judgment are denied as moot.

## I.     Factual Background

This case arises from JoAnn Yates' decision to keep her family home in the family, rather than to sell it to a qualified buyer.  In the 1970s, Gene Yates, husband of JoAnn Yates, purchased the property at issue.  Gene and JoAnn Yates lived in the house for years, raising two children.  Around

1994, Gene and JoAnn moved to a new home on a semi-permanent basis.  Their daughter subsequently moved into the home, but moved away in 2002 or 2003.

Around May 2004, with the house vacant, Gene suggested to JoAnn that they sell the home. JoAnn resisted, wanting to "keep it in the family."  (Dep. JoAnn Yates at 53, Doc. No. 141-3 at 9.) Ultimately, Gene prevailed, and he and JoAnn contacted defendant Carol Eicher ("Eicher") to list the property for sale.  Eicher is a licensed realtor associated with defendant Sluss Realty Company ("Sluss"), a real estate brokerage.  On August 8, 2004, Eicher met with Gene and JoAnn Yates.  Gene and JoAnn's son, Brent Yates, was also present, as was his wife, Kim.  Gene and JoAnn Yates agreed to list the property with Eicher through Sluss, and signed the listing agreement.  The house was put on the market, with the listing to expire on February 8, 2005.

Towards the end of September 2004, Gene Yates was diagnosed with lung cancer.  (Dep. JoAnn Yates at 90, Doc. No. 141-3 at 23.)  Sometime that fall, he and JoAnn went to Florida.  During that time, Eicher would notify Brent and Kim Yates when she was showing the house.

On January 12, 2005, Gene Yates passed away.  About two weeks before his death, he and JoAnn had agreed to take the house off the market.  (Dep. JoAnn Yates at 128, Doc. No. 141-3 at 46.) However, in the subsequent weeks before his death, Gene did not take the house off the market.  When he died, the house passed to his estate.  At that point, Gene and JoAnn's children tended to a number of JoAnn's financial affairs, including the sale of the house.  (Dep. JoAnn Yates at 92-94, Doc. No. 141-3 at 23-24.)  Brent Yates took over responsibility for the sale of the home; however, he was not told that his parents' wishes had changed.

On February 8, 2005, Eicher called Brent Yates to tell him that the listing on his parents' property was about to expire and asked if she should speak with JoAnn.  Brent indicated that would not

-2-

be necessary because he had the authority to handle the paperwork; he subsequently signed a listing extension.

During April 2005, plaintiffs Douglas and Tina Lindsay (the "Lindsays") visited the Yates' property with their real estate agent.  The Lindsays subsequently submitted a written offer through their agent to Eicher, the Yates' agent.  Eicher conveyed the offer to Brent, who rejected it.  However, after some negotiation, the parties arrived at a purchase price of $175,000.  On May 12, 2005, the Lindsays signed a purchase agreement, and Brent signed the next day.

On May 24, 2005, Sluss and Eicher informed the Lindsays that the sales contract would be terminated because JoAnn Yates could not bear to part with the property "for sentimental reasons." Based upon certain events that occurred between May 13, when Brent signed, and May 24, when JoAnn terminated the purchase agreement, the Lindsays believe that JoAnn's reason for terminating was pretext; they believe that JoAnn Yates did not want to sell them the property because they are African American.

The exact timing of these intervening events is highly disputed.

The Lindsays' evidence is inconsistent.  They allege that a "couple days" after Brent signed the purchase agreement, the Lindsays visited the property to identify the property lines, which is when they first met Brent Yates.  A "couple days" after Brent signed the contract would be Saturday, May 15th. In deposition, Douglas Lindsay thought that the meeting had occurred on a Saturday or Sunday.  (Dep. Douglas Lindsay at 59; Doc. No. 141-6 at 17.)

The Lindsays acknowledge that the contract was terminated on May 24th, which they allege was the day after they met Brent.  However, prior to filing this lawsuit, the Lindsays filed a complaint with

-3-

the United States Department of Housing and Urban Development in which they stated that the contract was terminated 2-3 days after they met Brent.  (Doc. No. 147-41 at 2.)

Brent Yates' testimony is also inconsistent.  He alleges that he met the Lindsays on a Thursday or a Friday, which would presumably be May 19th or 20th.  (Dep. Brent Yates at 99; Doc. No. 141-5 at 25.)  He also states that he was told that the Lindsays stopped by his office three or four days later, but did not meet with him at that time because he was tied up.  (Dep. Brent Yates at 100; Doc. No. 141-5 at 25.)  Brent further states that both of these events took place before he called his mother to tell her there was a buyer.  (Dep. of Brent Yates at 101; Doc. No. 149 at 4.)  However, Brent also indicates that he told his mother about the purchase agreement within three to five days of his signing, meaning by May 18.  (Dep. of Brent Yates at 82, Doc. No. 141-5 at 21.)  When Brent called his mother and told her about the purchase agreement, she said that she did not want to sell the property; it had been Gene who had wanted to sell, not her.  (Dep. of Brent Yates at 82-84; Doc. No. 141-5 at 21-22.)

The parties agree that the purchase agreement was terminated on May 24th.  A few months later, sometime in August, JoAnn Yates offered to sell the house to the Lindsays on the same terms as the purchase agreement, but the Lindsays declined the offer.

## II.  Procedural Background

The Lindsays filed their seven-count complaint in this court on June 16, 2005 alleging racial-discrimination in the sale of real property in violation of 42 U.S.C. §§1982, 3603, 3604 and O.R.C. § 4112.02(H)(1), racial discrimination through interference with contractual rights in violation of 42 U.S.C. § 1981, breach of contract, and "intentional, fraudulent, wanton, and discriminatory breach of contract."  Sluss and Eicher subsequently filed a cross-claim against the Estate of Gene Yates, Brent

Yates, and JoAnn Yates for contribution and indemnification as well as for damages for loss of commission from the sale of the property.

On June 13, 2006, Brent Yates, JoAnn Yates, and the Estate of Gene Yates (collectively the "Yates Defendants") moved for judgment on the pleadings under Rule 12(c) on the basis that the Lindsays had failed to plead facts showing that the purchase agreement was valid and enforceable.  This court did not reach the issue of the purchase agreement because the Lindsays had failed to plead facts establishing each element of a prima facie case under the *McDonnell Douglas/Burdine* framework. Accordingly, the court dismissed the Lindsays' federal and state discrimination claims and declined to exercise supplemental jurisdiction over the Lindsays' state contract claims.

The Lindsays appealed this court's dismissal of their claims under 42 U.S.C. §§ 1981, 1982, and 3604 to the Sixth Circuit.  The Sixth Circuit expressly extended the Supreme Court's holding in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), an employment-discrimination case, to housing-discrimination cases.  *Lindsay v. Yates*, 498 F.3d 434, 439-40 (6th Cir. 2007).  Applying *Swierkiewicz*, the Sixth Circuit found that a housing-discrimination plaintiff need not plead facts establishing a prima facie case under the *McDonnell Douglas/Burdine* framework to state a claim for relief.  *Id*. at 440.  The court explained that the framework "is an evidentiary standard, not a pleading requirement."  *Id*. (quotation and citation omitted).  Accordingly, the Sixth Circuit reversed this court's finding that the pleadings were insufficient.  *Id*. at 442.  However, the Sixth Circuit did not express an opinion regarding whether the Lindsays would be able to establish a prima facie case sufficient to overcome the evidentiary hurdles of summary judgment.

The Sixth Circuit also addressed the adequacy of the pleadings as to the purchase agreement. *Id.* at 440-42.  Specifically, the Yates Defendants argued that the Lindsays had to allege that the

purchase agreement was valid and enforceable to state a claim under federal and state housing-discrimination laws.  *Id.* at 441.  They further argued that the Lindsays had to plead facts showing that JoAnn Yates represented to them that she had authorized Brent as her agent. *Id.*  The Sixth Circuit found that the Lindsays had alleged sufficient facts to state a claim for relief, noting that "whether JoAnn Yates actually authorized Brent to arrange for the sale of the Eckert Road property, and what the scope of that authority was, are questions of fact that cannot be resolved at the pleading stage, and may even turn on a credibility determination that is unsuitable for summary judgment." *Id.* at 442.  Accordingly, the Sixth Circuit held that the Lindsays had pleaded sufficient facts to adequately state a claim for relief.  *Id.*

At the summary judgment phase, Brent and JoAnn Yates (joined by the Estate of Gene Yates) do *not* move for summary judgment on the theory that Brent lacked authority to enter into the purchase agreement.  Instead, they move for summary judgment because the Lindsays cannot establish a prima facie case under the *McDonnell Douglas/Burdine* framework because they have not offered any evidence that the house was taken off the market after the purchase agreement was terminated.  In addition, the Estate of Gene Yates, Eicher, and Sluss have moved for summary judgment on all claims

## III.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Once the moving party has met its burden under Rule 56(c), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Although inferences based on the underlying facts are to be drawn in favor of the non-moving party, *id.* at 587, there must be more than

-6-

a mere "scintilla" of evidence to support the plaintiff's position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Thus, if a defendant moves for summary judgment "based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* However, if the facts of the case are undisputed, then one of the parties is clearly entitled to summary judgment. *Atlantic Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 206 (6th Cir. 1996).

## IV.     Discussion

The Yates Defendants move for summary judgment on the Lindsays' discrimination claims under 42 U.S.C. §§ 1981, 1982, and 3604.[1] They argue that to prevail at summary judgment, the Lindsays must come forth with evidence that the house remained on the market after termination of the purchase agreement to establish a prima facie case under the *McDonnell Douglas/Burdine* framework.[2]

Under the *McDonnell Douglas/Burdine* framework, a plaintiff in a housing-discrimination case must first make a prima facie case by establishing  "(1) that he or she is a member of a racial minority, (2) that he or she applied for and was qualified to rent or purchase certain property or housing, (3) that he or she was rejected, and (4) that the housing or rental property remained available thereafter." *Mencer v. Princeton Square Apartments.*, 228 F.3d 631, 634-35 (6th Cir. 2000).[3] If the plaintiff

---

[1] The Estate of Gene Yates joins in the motion filed by Brent and JoAnn Yates.

[2] The Lindsays concede that there is no direct evidence of discrimination in this case. (Doc. No. 147 at 16.)  Rather, because their claims are based on circumstantial evidence, they must be analyzed under the familiar *McDonnell Douglas/Burdine* framework.

[3] This standard is used for claims brought pursuant to 42 U.S.C. §§ 1981, 1982, and 3604. *Selden Apartments v. United States Dep't of Housing & Urban Dev.*, 785 F.2d 152, 159 (6th Cir. 1986).

establishes such a case, then the burden shifts to the defendant to prove a legitimate, nondiscriminatory reason for its housing decision.  *Id.* at 634.  If the defendant proves such a reason, then the burden shifts back to the plaintiff to prove that the defendant's reason is merely pretext to hide its discriminatory motivation.  *Id.*

Here, the parties dispute only whether the Lindsays have established the fourth element of the prima facie case.  To meet their burden, the Yates Defendants alleged that the house did not remain available after termination of the purchase agreement because the house was taken off the market, and has remained off the market.  In support of this allegation, they point to the declaration of JoAnn Yates, in which she attests that she made no efforts to sell the home since Gene Yates passed away, that the home is not currently for sale, and that it has not been put up for sale since it was taken off the market in 2005.  (Doc. No. 141-4.)  They also point to Eicher's deposition in which Eicher explained that after she learned JoAnn did not want to sell, she had JoAnn execute a document to withdraw the house from the market.  (Dep. Carol Eicher at 113-114; Doc. No. 147-24 at 9.)

The Lindsays provide no evidence of any subsequent efforts made by the Yates Defendants to sell the property.  In fact, the only evidence the Lindsays offer is that the Yates Defendants allegedly offered to honor the purchase agreement later that summer to settle the case, but that the Lindsays declined.  (Dep. Douglas Lindsay at 80; Doc. No. 141-6 at 22.)  The Lindsays then speculate that since the Yates Defendants had subsequently offered to sell them the home on the terms of the purchase agreement, that the Yates Defendants could have informally offered the property to others.  However, the Lindsays offer no evidence to support this speculation.  In the nearly three years since this case was filed, they have not been able to produce evidence of any such offer.  Nor have they offered any evidence that the house has been offered through formal, or informal, channels.  Although the court

draws inferences in favor of the Lindsays, the non-moving party, there must be more than a mere scintilla of evidence to support their position. In this case, JoAnn Yates' offer to honor the purchase agreement in settlement is at best a scintilla. A fair-minded jury could not find from that evidence alone that the house remained available, and therefore could not return a verdict for the Lindsays from the evidence presented. Accordingly, the Lindsays' housing-discrimination claims cannot survive the Yates Defendants' motion for summary judgment.

## V.      Conclusion

For the reasons set forth above, the court grants the Yates Defendants' motion for summary judgment and dismisses all federal claims with prejudice. (Doc. No. 141.) Further, because the federal housing-discrimination evidentiary framework applies to the Lindsays' Ohio law housing-discrimination claim, it too is dismissed with prejudice.[4] In addition, because the court has found no liability on the federal claims, Sluss and Eicher's cross-claim for contribution and indemnity is dismissed without prejudice. Further, the court declines to exercise supplemental jurisdiction over the Lindsays' state-law contract claims and Sluss and Eicher's state-law contract cross-claim. Therefore, these state-law contract claims are dismissed without prejudice. Accordingly, the Estate of Gene Yates' motion for summary judgment (Doc. No. 142) and Eicher and Sluss' motion for summary judgment (Doc. No. 145) are denied as moot. This order is final and appealable.

IT IS SO ORDERED.

_/s/ AnnAldrich_
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

Dated: May 5, 2008

_____

[4] As this court previously noted, the Lindsays' Ohio law housing-discrimination claim under O.R.C. § 4112.02 mirrors that of the Federal Fair Housing Act, and thus is subject to the same evidentiary framework as the latter. _Lindsay v. Yates_, No. 1:05-cv-1625, 2006 U.S. Dist. LEXIS 79482, at *8 (N.D. Ohio Oct. 17, 2006) (citing _Allen v. Ethicon, Inc._, 919 F.Supp. 1093, 1098 (S.D. Ohio 1996)).